-1-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIJUANA MILLER**<br>    Plaintiff<br><br>v.<br><br>**DIMENSION DEVELOPMENT COMPANY, INC.**<br>d/b/a **INTERCONTINENTAL NEW ORLEANS**<br>    Defendant | **CIVIL ACTION NO.**<br><br>**JUDGE:**<br><br>**MAGISTRATE:** |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.  This is a proceeding for damages and injunctive relief to redress the deprivation of rights secured to Kijuana Miller ("Miller" or "Plaintiff") by the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12101 et seq. ("ADAAA"), Title VII, as amended, the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq.* ("FMLA") and the Louisiana Employment Discrimination Law, La. R.S. 23:301 et seq.

2.  The purpose of the ADAAA and FMLA and parallel Louisiana law is to eliminate employment discrimination/retaliation against individuals with disabilities.  In this case, Title VII the ADAAA and FMLA and concurrent state law make it unlawful to discriminate against a qualified employee on the basis of retaliation because of someone already complained about disability discrimination or asked for an accommodation, and/or due to a sex harassment complaint.

4.  The ADAAA, Title VII as amended, and the FMLA also provides punitive damages or liquidated damages as a deterrent.

## JURISDICTION

5.     The jurisdiction of the Court over this controversy is invoked pursuant to the provisions of 28 U.S.C. §1331, 42 U.S.C. §12117(a), and 28 U.S.C. §1367.

## VENUE

6.     Unlawful employment practices alleged below were committed within the state of Louisiana, and venue, therefore, lies in the United States District Court for the Eastern District of Louisiana under 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

7.     Miller is a resident of New Orleans, Louisiana and is a person entitled to protection pursuant to the provisions of Title VII and parallel Louisiana law.

8.     Defendant, Dimension Development Company, Inc. d/b/a Intercontinental New Orleans ("INO") is a Louisiana entity doing business in the state of Louisiana. INO was Plaintiffs' employer within the meaning of Title VII and La. R.S. 23:302 at all times relevant to this action.

## FACTS

10.    Miller began her employment as a Senior Sales Manager beginning on April 1, 2013.

11.    On or about December 1, 2013, Miller was promoted to Director of Catering and Conference Service.

12.    On or about October 1, 2014, Miller received a management performance review with a score of 4 out of 5, with 5 being the best.

13. Plaintiff's immediate supervisor was Brett Forshag ("Forshag"), who was the Director of Sales and Marketing.

14. Forshag became Plaintiff's superior in March of 2015.

12. Upon information and belief, LDC utilizes a progressive discipline policy and evaluation policy which includes: (1) verbal warnings to identify problems; (2) written warnings, including a formal meeting with the employee, to establish clear performance expectations to correct the problems; (3) an opportunity for the employee to present his or her case; and (4) termination, if the problems remain unresolved after the above steps.

13. On or about June 10, 2015, there was a business development reception and dinner held at the INO to familiarize potential clients with the hotel.

14. During that reception, Forshag, who was intoxicated, touched Miller in a sexually inappropriate manner.

15. This sexual touching included, but was not limited to, placing his hand below her waistline on her buttocks.

16. On or about June 12, 2015, Miller met with Forshag to make it clear that such sexual touching was unwelcome, unwanted, and offensive to her.

17. Forshag was ultimately disciplined by INO for his conduct, however, at that time he apologized and promised not to do it again.

18. However, although Forshag initially acted repentant with Miller for his illegal behavior, his real intention to retaliate was revealed on July 14, 2015 when he presented Plaintiff

with a Performance Improvement Plan ("PIP") after only being her manager for about three months.

19.     Miller presented this PIP without any prior progressive discipline as per Defendant's written policies.

20.     This PIP unjustifiably criticized Miller for purported deficiencies, which Forshag knew, or should have known, were either not deficiencies at all or were grossly unfair interpretations of what had happened.

21.     On or about July 17, 2015, Miller notified Suzette Gaudet, INO's Human Resource director, of the sexual harassment, her complaint about it to Forhsag and then the retaliation with a PIP without any prior discipline and involved allegations which were obviously untrue or grossly unfair.

22.     On July 21, 2015, Miller notified Samuel Cueva (INO HR) that she had received a retaliatory PIP from Forshag after complaining about sexual harassment.

23.     Cueva was extremely angry that Miller had contacted him to become involved in this complaint, stating "You should have handled this on the property level!"

24.     Cueva had an exceedingly retaliatory attitude about Miller's complaints about sex harassment and retaliation.

25.     On or about July 24, 2015, Miller sent Cueva an email along with documents and information concerning her complaint and immediate retaliation.

26.     In August 2015, Forshag added addition duties in retaliation to Plaintiff Miller.

27. Miller was a sales manager and her department met its quota for the entire time she was employed.

28. Nonetheless, on or about September 22, 2015, Forshag sent an email to Miller arbitrarily increasing her October to December sales quota. This was just 8 days prior to the end of the quarter.

29. On November 3, 2015, Plaintiff filed an EEOC charge alleging sex harassment and retaliation.

30. On November 15, 2016 Plaintiff received an email stating that Forshag's prior email of September 22, 2015, which increased her quota, needed to be corrected by his superior, John Romano, the GM.

31. In December 2015, Miller advised her management that she had been diagnosed with anxiety disorder and need FMLA leave.

32. Thus, at that point, Miller had established a record of disability and justification for FMLA leave.

33. On or about December 21, 2015, Plaintiff complained to Cueva again in writing about the harassment, ongoing retaliatory treatment, etc.

34. In December 2015, plaintiff applied for and was approved for FMLA leave for stress and anxiety.

35. On January 6, 2016, Plaintiff had to be taken to the ER for chest pains due to anxiety.

36. From January 6, 2016 to March 17, 2016, Plaintiff was out on medical leave under the FMLA.

37. On March 18, 2016, GM Romano, Forshag, and Gaudet provided her with a final written warning of employment. At that time, she was told not to communicate with any of her clients until further notice and that she could not go to any of the meeting room floors, that she not interact with her team and that she provide Romano with an email as to her daily activities. And she was to meet with Romano every day to discuss the work tasks done until prior notice.

38. Additionally, she was told to not answer any phone calls on her direct dial number or any phones in the office.

39. Finally, Romano, Forshag and Gaudet gave Miller an annual review scoring 2 out of 5.

40. On or about March 8, 2016, employee Joan Richard Smith had been hired and was acting in her position during Plaintiff's medical leave.

39. Smith was obviously being groomed to replace Plaintiff.

40. On June 1, 2016, Romano came to Plaintiff's office to remind her that she was on her final warning before being terminated.

41. On June 21, 2016, Romano came to Plaintiff's office on the way home, stuck his head in the door and said, "I'm going to get rid of you."

42. On or about July 29, 2016, Forshag's employment was terminated.

43. On August 16, 2016, Plaintiff was terminated for unjustified reasons.

44. Stress, anxiety, and depression are covered disabilities under the ADAAA. These are also qualifying conditions under FMLA leave.

45. Plaintiff's requests for medical leave were accommodations under the ADAAA and parallel Louisiana law.

46. The reasons for termination were retaliation under Title VII and Louisiana law; disability discrimination and retaliation under the ADA and Louisiana law; and retaliation under the FMLA.

## DAMAGES

47. As a direct and proximate consequence of Defendants' unlawful and/or discriminatory policies and practices, Plaintiff has suffered a loss of income, including, but not limited to, past and future wages, reinstatement, benefits, payment for COBRA insurance and various other expenses, pain and suffering, mental anguish, compensatory damages, punitive damages, attorney's fees, costs and pre, and post termination judicial interest all to be specified at trial.

## FIRST CLAIM FOR RELIEF – RETALIATION UNDER TITLE VII

48. Due to the above and foregoing allegations, Defendant is liable unto Plaintiffs for termination due to retaliation for complaining about illegal practices under Title VII, as amended and parallel Louisiana law; thus Defendant is liable for:

   A. Back-pay including benefits;

   B. Front-pay including benefits;

   C. Mental anguish (uncapped emotion distress damages under Louisiana law);

   D. Humiliation/embarrassment;

   E. Loss of enjoyment of life;

      F.      Medical expenses;

      G.      Punitive Damages;

      H.      Pre, and post judgment interest;

      I.      Attorney's fees;

      J.      Costs of these proceedings; and

      K.      Injunctive relief enjoining defendant from interfering with plaintiff's efforts to obtain future employment and enjoining and permanently restraining these violations of Louisiana Law and Federal law..

## **SECOND CLAIM FOR RELIEF – DISABILITY DISCRIMINATION**

49. Plaintiff restates, re-alleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 46, inclusive herein.

509. Plaintiff claims that Defendant thought she was actually disabled and was regarded as disabled under Louisiana law.  This was a motivating factor in her termination.

50. Plaintiff alleges that she was terminated due to disability discrimination and retaliation for seeking accommodations of medical leave and time off for doctor visits.

51. Plaintiffs allege that their termination was in blatant disregard of their federally protected rights under the ADAAA.  Accordingly, Plaintiffs allege that punitive damages are appropriate herein.

52. Defendant failed to enter a good faith interactive process in violation of the ADAAA when it began to have concerns over Plaintiff's medical condition.

53. Due to the above and foregoing allegations, Defendant is liable unto Plaintiffs for termination due to retaliation for complaining about illegal practices under Louisiana Whistleblower Act; thus Defendant is liable for:

    A. Back-pay including benefits;

    B. Front-pay including benefits;

    C. Mental anguish (uncapped emotion distress damages under Louisiana law);

    D. Humiliation/embarrassment;

    E. Loss of enjoyment of life;

    F. Medical expenses;

    G. Pre, and post judgment interest;

    H. Attorney's fees;

    I. Costs of these proceedings; and

    J. Injunctive relief enjoining defendant from interfering with plaintiff's efforts to obtain future employment and enjoining and permanently restraining these violations of Louisiana Law and Federal law..

**SECOND CLAIM FOR RELIEF – VIOLATIONS OF THE FMLA**

54. Plaintiff restates, re-alleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 46, inclusive herein.

55. Defendant is liable for interfering with Plaintiff s FLMA benefits and retaliation because Plaintiff spoke of a need for medical leave and he was terminated in relation for this notification.

56. The FMLA does not require Plaintiff to specifically assert his or her rights under the FMLA, or even mention his or her rights under FMLA, or even mention FMLA.

57. Defendant is liable unto Plaintiff pursuant to the Family Medical Leave Act, which prohibits employers from discriminating and/or retaliating against employees for suggesting the potential need for a FMLA qualifying leave. Therefore, Defendant is liable unto Plaintiff for: Wages, salary, employment benefits or other compensation denied or lost to Plaintiff; Pre and post judgment judicial Interest; Liquidated damages, pre and post judgment interest, and equitable relief as may be appropriate, including employment, reinstatement, and promotion.

## IV.  JURY DEMAND

58. Plaintiff requests trial by jury.

59. Plaintiff reserves her right to supplement and amend this Complaint upon the discovery of additional facts.

60. Plaintiff shows amicable demand to no avail.

WHEREFORE, Plaintiff, Kijuana Miller, prays that Defendant, Dimension Development Company, Inc. d/b/a Intercontinental New Orleans, be duly cited to appear and answer this Complaint and Jury Demand and, after due proceedings and legal delays, there be judgment herein in favor of your Plaintiff, and against Defendant, as detailed in the foregoing Complaint and Jury Demand and in an amount reasonable in the premises, together with pre and post judgment legal interest from the date of judicial demand and judgment, all costs of these proceedings, reasonable attorney's fees, punitive damages and any and all general and equitable relief deemed appropriate by this Honorable Court under the circumstances.

Respectfully submitted,


____/s/ James L. Arruebarrena_____
James L. Arruebarrena (#22235) T.A.
James L. Arruebarrena, LLC
1010 Common Street, Suite 3000
New Orleans, Louisiana 70112
Telephone (504) 525-2520
Facsimile (504) 518-4432
jim@unfairtermination.com

**Attorney for Kijuana Miller**


**SERVICE VIA SUMMONS TO**
**DIMENSION DEVELOPMENT COMPANY, INC.'S**
**AGENT FOR PROCESS:**

**Mr. Gregory D. Friedman**
**769 Hwy. 494**
**Natchitoches, LA  71457**

-12-

-12-